IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JACOB PFALLER, Administrator
of the Estate of
Danny Harold Pfaller

    Plaintiff,

v.                                         Civil Action No. 3:19cv728

HAROLD CLARKE,
et al.,

    Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on DEFENDANTS ARMOR CORRECTIONAL HEALTH SERVICES, INC., AND JALAL TASLIMI, M.D.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 100) (the "MOTION"). For the reasons set forth in the Court's March 22, 2021 ORDER (ECF No. 209), the MOTION was denied as to Count III and Count VII. For the reasons set forth below, the Court's March 25, 2021 ORDER (ECF No. 211) granted the MOTION as to Count I and Count VIII.

**BACKGROUND**

**I. Procedural Background**

This case arises from the death of Danny Harold Pfaller ("Pfaller") of liver cancer while in the custody of the Virginia Department of Corrections. Plaintiff Jacob Pfaller, the Administrator of Danny Pfaller's estate, alleges federal constitutional claims and state law tort claims against various

1

defendants in their individual capacities, including Dr. Jalal Taslimi and Armor Correctional Health Services, Inc. As to Plaintiff's federal constitutional claims against Taslimi and Armor, Plaintiff alleges that Taslimi violated Pfaller's Eighth Amendment rights by failing to treat Pfaller with "pain medications such as a Fentanyl patch" in the last nine days of his life (Count I). Compl. ¶ 173, ECF No. 1. Similarly, Plaintiff alleges that Armor violated Pfaller's Eighth Amendment rights through a custom or policy of "denying palliative care to patients with terminal cancer" (Count VIII). Id. ¶ 215. As to Plaintiff's state law claims against Taslimi and Armor, Plaintiff alleges that Taslimi engaged in medical malpractice by providing only "non-palliative care medications" (Count III) and that Armor is thus also liable under the doctrine of respondeat superior (Count VII). Id. ¶¶ 194, 211.

Taslimi and Armor moved for summary judgment. ECF No. 100. The sole basis of the MOTION as to the state law claims (Counts III and VII) was that the testimony of Plaintiff's experts Dr. Paul J. Gaglio and Dr. Travis Schamber should be excluded and without that testimony Plaintiff could not prove his state law claims. Defs.' Mem. Supp. 16-17, ECF No. 105. The Court denied Taslimi and Armor's motion in limine to exclude their testimony, Order, ECF No. 170; thus, the MOTION was denied as to Counts III and VII, ECF No. 209. On March 24, 2021, the Court heard argument on the MOTION as to the federal claims against Taslimi and Armor

2

(Counts I and VIII) and issued an order granting summary judgment, with this opinion to follow. ECF No. 211.

## II. Undisputed Facts

On September 25, 2018, Pfaller, a sixty-four-year-old male with Hepatitis C and recently diagnosed Stage IVb liver cancer was transferred from Green Rock Correctional Center to Deep Meadow Infirmary for palliative care. Taslimi Decl. ¶ 3, ECF No. 105-1.[1] At Deep Meadow, medical services were provided by Armor employees, see Answer ¶ 26, ECF No. 29, including Taslimi, who is a primary care physician and Deep Meadow's Medical Director, Taslimi Dep. 13:16-17, ECF No. 105-4. When Pfaller was transferred to Deep Meadow, Taslimi became Pfaller's physician. Id. 18:20-23.

The day Pfaller arrived, Taslimi examined him. ECF No. 105-1 ¶ 4. Taslimi noted that Pfaller had hepatocellular carcinoma, Stage IVb, with life expectancy of less than three months, and discussed Pfaller's prognosis with him. Id. Pfaller refused treatment, executed a DNR, and requested comfort care. Id.; Taslimi Decl. Ex. A, at 15, ECF No. 105-3. Taslimi prescribed Pfaller multiple medications, including the pain medication Mobic to be taken twice daily as needed,[2] and ordered blood work. ECF No. 105-1 ¶ 5.

---

[1] The secondary citations set forth in Taslimi's declaration are omitted.

[2] Plaintiff contends that Taslimi "merely continued" Pfaller's existing Mobic prescription. Pl.'s Resp. Opp'n ¶ 5, ECF No. 127. Plaintiff fails to demonstrate how this distinction is material.

3

At approximately 6:00 p.m. on September 25 and 11:30 a.m. on September 26, Pfaller received a dose of Mobic. Id. ¶¶ 6-7. On September 27, Taslimi saw Pfaller and "discussed his condition and prognosis as well as his appointment scheduled for October 4, 2018, at VCU Medical Center for a consult with a medical oncologist to further discuss his diagnosis and treatment options." Id. ¶ 8. Taslimi also prescribed Pfaller Norco, a narcotic pain medication, to be given as needed up to three times a day. Id. The same day, Pfaller saw a psychiatrist at Deep Meadow and "refused treatment for his mental health issues and reported that he did not want any more pills." Id. ¶ 9. At approximately 10 p.m. Pfaller requested and received a dose of Norco. Id. ¶ 10.

On September 28, Pfaller requested and received a dose of Norco at approximately 7 a.m. Id. ¶ 11. He again saw Taslimi to discuss his diagnosis and his upcoming oncology appointment. Id. ¶ 12. Pfaller refused to go to the appointment, notwithstanding Taslimi's encouragement that he do so, and Pfaller indicated "that he was refusing additional treatment such as chemotherapy and radiation and just wanted to die peacefully," signing a Refusal to Consent to Medical Treatment to this effect. Id.; ECF No. 105-4 at 43:18-44:3. At approximately 3:30 p.m. Pfaller requested and received a dose of Norco. ECF No. 105-1 ¶ 13. At approximately 10 p.m. Taslimi "was notified of the results of Mr. Pfaller's lab work, which showed a critical result related to his kidney

4

function." Id. ¶ 14. Taslimi discussed these results with Pfaller. Id. Pfaller "agreed to be transferred to VCU Medical Center for an evaluation of his critical lab results and possible kidney shutdown." Id.

On September 29, at approximately 4:40 a.m., Pfaller returned to Deep Meadow after refusing inpatient admission at VCU Medical Center. Id. ¶ 15. Pfaller was alert and oriented, denied any pain or discomfort, and refused his vital signs check. Id. At 8:00 p.m., Pfaller denied any pain. Id. ¶ 16. On September 30, Pfaller similarly was alert and oriented, had no complaints of pain, refused his vital signs check, and refused one of his prescribed medications. Id. ¶ 17.[3]

On October 1, at approximately 6:00 a.m., Pfaller received a dose of Mobic. Id. ¶ 18. "At 10:00 a.m., Mr. Pfaller refused supplemental oxygen." Id. "He was educated and encourage[d] to keep the oxygen on at all times, but he still refused." Id. At approximately 4:30 p.m., "Pfaller refused to eat his dinner but drank some water." Id. ¶ 19. At 5:00 p.m., he refused his

---

[3] Plaintiff asserts that there is "other evidence reflecting Danny Pfaller was complaining of and in pain not reflected in this medical note." ECF No. 127 ¶ 17 (citing Schamber Dep. 22:13-25, ECF No. 127-4). The cited testimony does not support this assertion. And when asked at the hearing on the MOTION whether there was any other part of the record demonstrating that Pfaller was complaining of pain, Plaintiff's counsel replied that there was not.

5

medication. Id. At 11:00 p.m., he "refused his vital signs check and assessment by the nursing staff." Id. ¶ 20.

On October 2, at approximately 8:00 a.m., Pfaller again refused his vital signs check and assessment. Id. ¶ 21. Taslimi saw Pfaller at 9:00 a.m. Id. ¶ 22. Taslimi noted that Pfaller "was able to communicate with him, insisted that he did not want any treatment, and stated again th[at] he just wanted to die peacefully." Id. Pfaller did not complain of pain or shortness of breath. Id. At 11:00 a.m., Pfaller refused his medication. Id. ¶ 23. At 3:00 p.m., Pfaller became agitated and was given 1 mg of Ativan. Id. At 5:00 p.m., Pfaller again refused his medications. Id.

On October 3, Taslimi was neither working at Deep Meadow nor on call. Id. ¶ 24. Nevertheless, staff called him about Pfaller's condition. Id. At 11:00 a.m., Taslimi ordered Ativan for Pfaller. Id. At approximately the same time, the on-call physician, Dr. Ronald Toney, ordered a Fentanyl patch for Pfaller, which he received at 2:30 p.m. Id. ¶ 25; Toney Decl. ¶ 3, ECF No. 105-5. "Pfaller's condition continued to deteriorate, and he passed away at 9:58 [p.m.]." ECF No. 105-1 ¶ 26.

### III. Legal Standards

#### a. Summary Judgment Standard

A district court should grant a party's motion for summary judgment where the moving party demonstrates that there are no

genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict for the non-moving party. Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 568 (4th Cir. 2015). A fact is "material" if, based on the governing law, it could affect the outcome of the suit. Id. "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

To successfully oppose a motion for summary judgment, the nonmoving party must show that there are specific facts that create a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). And, "'[c]onclusory or speculative allegations do not suffice' to oppose a properly supported motion for summary judgment, 'nor does a mere scintilla of evidence.'" Matherly v. Andrews, 859 F.3d 264, 280 (4th Cir. 2017) (quoting Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002)). Consequently, summary judgment is appropriate where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991).

When evaluating a motion for summary judgment, the district court must view the evidence in the light most favorable to the non-moving party. Jacobs, 780 F.3d at 568. That includes drawing

7

all reasonable inferences in favor of the non-moving party. Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1004 (4th Cir. 1987). The court must also refrain from weighing the evidence or making credibility determinations. Jacobs, 780 F.3d at 569. "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." Jacobs, 780 F.3d at 568 (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice and Procedure § 2728 (3d ed. 1998)).

**b. Eighth Amendment Standard**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition "encompasses 'the treatment a prisoner receives in prison and the conditions under which he is confined.'" Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) (quoting Helling v. McKinney, 509 U.S. 25, 31 (1993)). The Fourth Circuit explained in Scinto v. Stansberry, 841 F.3d 219 (4th Cir. 2016):

> In particular, the Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement . . . [and] ensure that inmates receive adequate food, clothing, shelter, and medical care." To that end, a prison official's "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Prisoners alleging that they have been subjected to unconstitutional conditions of confinement must satisfy the Supreme Court's two-pronged

8

>  test set forth in Farmer v. Brennan, 511 U.S.
>  825 (1994).

Id. at 225 (citations omitted) (alterations in original) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994); Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

The first prong of the Farmer test is the objective prong. Id. It requires a plaintiff to prove that the alleged deprivation was sufficiently serious, i.e., "the deprivation must be 'extreme' – meaning that it poses 'a serious or significant physical or emotional injury resulting from the challenged conditions,' or 'a substantial risk of such serious harm resulting from . . . exposure to the challenged conditions.'" Id. (quoting De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003)). In a case involving medical care, "the Farmer test requires plaintiffs to demonstrate officials' deliberate indifference to a 'serious' medical need that has either 'been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)).

The second prong of the Farmer test is the subjective prong. It requires a plaintiff to show that a prison official acted with deliberate indifference. Id. "To prove deliberate indifference, plaintiffs must show that 'the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" Id. (quoting

9

Farmer, 511 U.S. at 837). This involves "two slightly different aspects of an official's state of mind": (1) "actual knowledge of the risk of harm to the inmate" and (2) recognition "'that his actions were insufficient' to mitigate the risk of harm to the inmate arising from his medical needs." Iko, 535 F.3d at 241 (quoting Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001); Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004)); see also Scinto, 841 F.3d at 226. Ultimately, deliberate indifference is akin to criminal recklessness: "'more than mere negligence,' but 'less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result.'" Scinto, 841 F.3d at 224 (quoting Farmer, 511 U.S. at 835) (alteration in original). Mere disagreement between an inmate and a physician "over the inmate's proper medical care" is not deliberate indifference. Id. at 225 (quoting Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)).

c. **Monell** Standard

In Monell v. Department of Social Services and its progeny, the Supreme Court developed "principles of § 1983 municipal liability"; the Fourth Circuit has extended those principles to private corporations. Austin v. Paramount Parks, Inc., 195 F.3d 715, 727-28 (4th Cir. 1999). Like municipalities, private corporations are "not liable under § 1983 for torts committed by [employees] when such liability is predicated solely upon a theory

10

of respondeat superior." Id. at 728. "Rather, a private corporation is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights." Id. Such a policy or custom can come about in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (quoting Carter v. Morris, 164 F.3d 215, 217 (4th Cir. 1999)) (alteration in original).

## DISCUSSION

### I. Whether Taslimi violated Pfaller's Eighth Amendment rights through deliberate indifference

Taslimi argues that he is entitled to summary judgment on Count I because Plaintiff has not demonstrated that he was deliberately indifferent to Pfaller's serious medical needs. Taslimi does not contest that Pfaller's terminal liver cancer diagnosis satisfies the objective prong of the test. Taslimi does argue, however, that Plaintiff cannot prove that Taslimi's actions satisfy the subjective prong of the Farmer test – that Taslimi was deliberately indifferent to treating the pain caused by Pfaller's terminal liver cancer.

11

The parties agree that, while Pfaller was in Taslimi's care, Pfaller wanted only palliative care - not treatment for his liver cancer. However, the parties disagree about what palliative care entails. Plaintiff asserts, citing the deposition testimony of his standard-of-care expert Dr. Travis Schamber, that palliative care entails the provision of basal pain medication. ECF No. 127 at 20 (citing Schamber Dep. 191:18-20, 196:14-18, ECF No. 127-5). Therefore, the failure to provide Pfaller basal pain medication, Plaintiff argues, evinces deliberate indifference. Taslimi counters, citing the deposition testimony of his expert Dr. Alfred Joshua, that, under the circumstances of this case, providing Pfaller basal pain medication was not appropriate. ECF No. 105 ¶ 40 (citing Joshua Dep. 61-62, ECF No. 105-6).

However, the circumstances of Taslimi's alleged deviation from that standard of care do not evince deliberate indifference. See Jackson v. Lightsey, 775 F.3d 170, 178-79 (4th Cir. 2014) (citing Iko, 535 F.3d at 241) (holding that a deviation from the standard of care does not, standing alone, clear the "high bar" for deliberate indifference). Deliberate indifference requires recklessness - knowing disregard of an excessive risk - not mere negligence. See Scinto, 841 F.3d at 225. Thus, a deviation from the standard of care that did not knowingly expose Pfaller to an excessive risk of untreated pain does not evince deliberate indifference.

12

Here, the record is devoid of evidence to suggest that Taslimi knew of a substantial risk that Pfaller was in untreated pain. The record reflects that, on September 25, the day Pfaller arrived at Deep Meadow, Taslimi prescribed Pfaller Mobic, a pain medication, to be taken twice daily as needed, and that two days later Taslimi prescribed Pfaller Norco, a narcotic pain medication, to be taken three times daily as needed. ECF No. 105-1 ¶¶ 5, 8. The record reflects that Pfaller requested and received Mobic on three occasions, id. ¶¶ 6-7, 18, and that he requested and received Norco on three occasions, id. ¶ 10-11, 13. The record also reflects multiple instances where Pfaller either denied that he was in pain or did not complain of pain when he saw medical personnel. Id. ¶ 15-17, 22. The record does not reflect that Pfaller complained that the pain medication he received was not strong enough or that Pfaller ever complained of pain without being offered pain medication.

Plaintiff asserts that the record nevertheless reflects that Pfaller was in pain. Plaintiff relies on the testimony of his causation expert, Dr. Paul J. Gaglio, that people dying of liver cancer generally experience pain. Gaglio Dep. 179:18-21, ECF No. 127-6. This testimony certainly helps establish that Pfaller had an objectively serious medical need. And this testimony might, under different circumstances, establish by inference that the Taslimi subjectively knew of a substantial risk that his treatment

13

of Pfaller was insufficient to mitigate the risk that Pfaller was in pain. See Farmer, 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." (citation omitted)). But under the circumstances presented in this record, no such inference is reasonable. The risk that Pfaller was in untreated pain was not obvious for the reasons explained above: Pfaller was never denied pain medication when he complained of pain, and he never complained that the pain medication he received was insufficient.

In addition, the record reflects that, for the vast majority of the nine days Pfaller spent in Taslimi's care, Pfaller was alert, oriented, and able to communicate with medical professionals and make decisions about his treatment and care. Joshua's undisputed testimony is that Pfaller "understood his diagnosis, understood what was happening." ECF No. 105-6 at 43:25-25. Taslimi noted a single occasion, on the afternoon of October 1, when he examined Pfaller and found him disoriented. Taslimi Dep. 41:13-19, ECF No. 127-2. But, by the morning of October 2, Taslimi was able to communicate effectively with Pfaller once again. Id.; ECF No. 105-1 ¶ 22. Thus, Pfaller's decisions, including his decisions on multiple occasions to refuse treatment

14

and medication, had to be respected. See ECF No. 105-6 at 43:23-44:1, 42:9-17.

In sum, the record reflects that Pfaller was never denied medication when he complained of pain, never complained that the medication he received was insufficient, and was able to make decisions about his treatment and care. On this record, there is no evidence from which a rational jury could conclude that Taslimi knew of a substantial risk that Pfaller was in untreated pain. Therefore, Taslimi is entitled to summary judgment on Count I.

## II. Whether Armor violated Pfaller's Eighth Amendment rights through a policy or custom of denying inmates palliative care

Armor argues that it is entitled to summary judgment on Count VIII because Plaintiff has not proven that Armor had a policy or custom of denying inmates palliative care that led to a deprivation of Pfaller's constitutional rights. As discussed above, the record does not reflect that Pfaller was deprived of his Eighth Amendment rights while in Taslimi's care. On that basis alone, Armor is entitled to summary judgment. See Spell v. McDaniel, 824 F.2d 1380, 1388 (4th Cir. 1987) ("[T]here must be proven at least an 'affirmative link' between policy or custom and violation."); Milligan v. City of Newport News, 743 F.2d 227, 229 (4th Cir. 1984) ("Liability arises only where the constitutionally offensive acts of city employees are taken in furtherance of some 'policy or custom.'" (quoting Monell, 436 U.S. at 694)).

15

Even assuming Pfaller was deprived of his Eighth Amendment rights while in Taslimi's care, the record does not reflect that Armor had a policy or custom of denying inmates palliative care that caused such a deprivation. Plaintiff does not allege that Taslimi was Armor's final policymaker as to palliative care, that Armor failed to properly train its employees in providing palliative care, or that Armor had a written policy of denying inmates palliative care.[4] See Lytle, 326 F.3d at 471 (explaining how a corporate policy or custom can arise). And, although Plaintiff argues that Armor had an unwritten policy of denying inmates palliative care, the evidence that Plaintiff cites to prove the assertedly unwritten policy is primarily Taslimi's treatment of Pfaller. See ECF No. 127 at 23-25.

Essentially, Plaintiff argues that Taslimi's failure to provide Pfaller basal pain medication for the nine-day period that Pfaller was in Taslimi's care is evidence that Armor had an unwritten policy of denying inmates palliative care. Even assuming that Taslimi should have provided Pfaller basal pain medication, "'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for

---

[4] The Complaint alleges that Armor had "a policy – formal or informal, written or unwritten," ECF No. 1 ¶ 215, but Plaintiff's response in opposition to the MOTION only alleges an unwritten policy, see ECF No. 127 at 22, and Plaintiff cites no evidence in the record to suggest Armor had a written policy.

§ 1983 purposes." Lytle, 326 F.3d at 473. Rather, the incidents must be numerous, widespread, and flagrant. See id.; Owens v. Balt. City State's Atty's Office, 767 F.3d 379, 403 (4th Cir. 2014). No other incidents are alleged, much less established in the record.

Other than Taslimi's treatment of Pfaller, the only evidence of an unwritten policy to which the Plaintiff points is the fact that three-and-a-half hours elapsed between the time Toney prescribed a Fentanyl patch for Pfaller on October 3 and when it was administered. See ECF No. 127 at 25. Plaintiff argues that this delay is evidence that Armor employees do not regularly use this type of medication. However, there is nothing in the record to suggest that this a reasonable inference; in fact, there is nothing at all in the record about the reason for the three-and-a-half-hour gap between prescription and application of the Fentanyl patch. Thus, the mere fact that there was a three-and-half-hour gap between prescription and administration fails to create a genuine issue of material fact as to whether Armor had a custom or policy of denying inmates palliative care. See Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Therefore, Armor is entitled to summary judgment on Count VIII.

17

## CONCLUSION

For the foregoing reasons, the Court's March 25, 2021 ORDER (ECF No. 211) granted DEFENDANTS ARMOR CORRECTIONAL HEALTH SERVICES, INC., AND JALAL TASLIMI, M.D.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 100) as to Count I and Count VIII.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: April 19, 2021